## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

GERALD TRAINOR       *

     *Plaintiff/Counter-Defendant*      *

v.       *      Civil Action No.: 23-cv-00881-JRR

MARK GLAGOLA, et al.       *

     *Defendants/Counter-Plaintiff*      *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

MARK GLAGOLA       *

     *Cross-Plaintiff*      *

v.       *

TRANSWESTERN DEVELOPMENT       *
COMPANY, LLC
      *

     *Cross-Defendant*      *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

MARK GLAGOLA       *

     *Counterclaim Plaintiff*      *

v.       *

TDC LOGISTICS COMPANY, L.L.C. f/k/a       *
RIDGE DEVELOPMENT COMPANY, L.L.C.
1900 West Loop Road, Suite 1300       *
Houston, Texas 77027
      *

    Serve upon:
    The Corporation Trust Company       *
    Registered Agent
    The Corporation Trust Center       *
    1209 Orange Street
    Wilmington, DE 19801       *

and                                              *

TRANSWESTERN CAREY WINSTON, LLC                   *
t/a Transwestern Commercial Services
1209 Orange Street                                *
Wilmington, DE 19801
                                                 *

    Serve upon:
    The Corporation Trust Company, Inc.           *
    2405 York Road
    Suite 201                                     *
    Lutherville Timonium, MD 21093
                                                 *

    *Counterclaim Defendants*

*    *    *    *    *    *    *    *    *    *    *    *    *

**DEFENDANT/COUNTER-PLAINTIFF/CROSS-PLAINTIFF MARK GLAGOLA'S**

**(1) ANSWER AND AFFIRMATIVE DEFENSES TO COMPLAINT,**

**(2) COUNTERCLAIM AGAINST PLAINTIFF/COUNTER-DEFENDANT, GERALD TRAINOR AND COUNTERCLAIM DEFENDANTS, TDC LOGISTICS COMPANY, LLC AND TRANSWESTERN CAREY WINSTON, LLC, AND**

**(3) CROSS-CLAIM AGAINST DEFENDANT/CROSS-DEFENDANT, TRANSWESTERN DEVELOPMENT COMPANY, LLC**

## ANSWER AND AFFIRMATIVE DEFENSES TO THE COMPLAINT

Defendant/Counter-Plaintiff/Cross-Plaintiff, Mark Glagola ("Glagola"), by and through his attorneys, pursuant to Rules 8 and 12 of the Federal Rules of Civil Procedure, files this Answer and Affirmative Defenses to the Complaint filed by Plaintiff/Counter-Defendant, Gerald Trainor ("Plaintiff"), and states as follows:

### General Denial

Glagola generally denies all wrongdoing or liability asserted in Plaintiff's Complaint.

### Specific Responses[1]

1.     Paragraph 1 of Plaintiff's Complaint purports to state the purpose of Plaintiff's Complaint and requires no response. To the extent a response is required, paragraph 1 is denied.

2.     Denied.

3.     Glagola admits the allegation in paragraph 3 of the Complaint that he obtained a judgment in this Court on or about July 25, 2022 in Civil Action No. 1:21-cv-01230-JMC ("Transwestern Lawsuit") but denies the remaining allegations.

4.     Glagola admits the allegation in paragraph 4 of the Complaint that the judgment in the Transwestern Lawsuit is stayed pending appeal but denies the remaining allegations.

5.     Paragraph 5 of the Complaint contains a statement of law to which no response is required from Glagola.  To the extent a response is required, Glagola denies Paragraph 5.

6.     Paragraph 6 of the Complaint purports to state the "purpose" of Plaintiff's lawsuit and requires no response. To the extent a response is required, paragraph 6 is denied.

7.     Admitted.

8.     Denied.

---

[1] The paragraph numbers in this Answer correspond to the paragraph numbers in Plaintiff's Complaint.

9.      Paragraph 9 contains a statement of law that requires no response. To the extent a response is required, Glagola does not dispute that this Court has personal jurisdiction.

10.     Paragraph 10 contains a statement of law that requires no response. To the extent a response is required, Glagola does not dispute that this Court has personal jurisdiction over Defendant TDC in this matter.

11.     Paragraph 11 contains a statement of law that requires no response. To the extent a response is required, Glagola does not dispute that this Court has diversity jurisdiction.

12.     Paragraph 12 contains a statement of law that requires no response. To the extent a response is required, Glagola does not dispute that venue is appropriate in this Court.

13.     Glagola does not have sufficient knowledge to admit or deny and therefore denies the allegations in paragraph 13 of the Complaint.

14.     Glagola admits the allegation in paragraph 14 of the Complaint that he was engaged as an independent contractor with Counterclaim-Defendant Transwestern Carey Winston, LLC t/a Transwestern Commercial Services ("TCS") for the purpose of, among other things, developing business for TCS arising out of the sale and capitalization of commercial properties, but he denies the allegation that he was engaged until June of 2020.

15.     Glagola admits that in or around 2016, Glagola and Plaintiff agreed to pool resources for their brokerage efforts to earn commissions through TCS as a team called "Mid-Atlantic Capital Markets Group" but denies the characterization of Glagola's and Plaintiff's agreement in paragraph 15 of the Complaint.

16.     Glagola admits that Exhibit 1 is a copy of a document signed by Glagola and Plaintiff but denies the remaining factual allegations in paragraph 16 of the Complaint, as they mischaracterize Glagola's and Plaintiff's arrangement and the contents of the document attached

as Exhibit 1. Glagola further denies that the document attached as Exhibit 1 was in effect during the relevant time period, as it was superseded by subsequent agreements the last of which was ultimately terminated.

17.     Glagola admits the allegation in paragraph 17 that Glagola and Plaintiff, through their Mid-Atlantic Capital Markets Group at TCS, often brokered the sale and capitalization of commercial properties for Defendant Transwestern Development Company, LLC ("TDC") but has insufficient knowledge regarding the corporate structure of TCS and TDC to admit or deny and therefore denies the remaining allegations in paragraph 17 and footnote 1.

18.     With respect to paragraph 18 of the Complaint, Glagola admits that Glagola and Plaintiff, through TCS, helped facilitate a deal between Counterclaim-Defendant Transwestern Development Company Logistics, LLC f/k/a Ridge Development Company, LLC ("TDC Logistics") and California State Teachers Retirement System ("CalSTRS") for the development of a parcel of land in Newell, Pennsylvania, whereby CalSTRS would be funding 100% of the equity for the development of the project, known as Penn Commerce. To the extent that the allegations in paragraph 18 of the Complaint are inconsistent with the foregoing recitation of facts, they are denied.

19.     Glagola denies the allegations in paragraph 19 of the Complaint, which are based on at least two false premises. With respect to the Penn Commerce project, the commission was not paid by Defendant TDC and it was not paid in August 2018. Further, to the extent paragraph 19 suggests otherwise, Glagola denies the allegation that the commission from the Penn Commerce project was distributed directly to Glagola and Trainor. Commission relating to the Penn Commerce project was paid by Counterclaim-Defendant TDC Logistics to Counterclaim-Defendant TCS. After the commission was paid to TCS in September 2018, 10% (or $25,000) was

allocated to TCS Executive Walter Byrd's team, 62.5% (or $140,625) was allocated to Plaintiff, and 37.5% (or $84,375) was allocated to Glagola, as per Glagola's and Plaintiff's arrangement with respect to splitting commission earned by TCS. However, these numbers do not represent the actual amounts paid to the aforementioned parties. For this particular transaction, TCS took approximately 20% off of each participant's share (for a total sum of approximately $50,000). Accordingly, Glagola's net commission for this particular deal was $67,576.69 (80.09% of $84,375).

20.     Glagola admits that he openly discussed with Plaintiff and his colleagues at TCS that, because there would not be the opportunity to participate in the typical private placement investment offering for the Penn Commerce deal (as a result of CalSTRS funding 100% of the equity), Glagola was discussing with TDC and TDC Logistics an alternative arrangement whereby Glagola would be paid a percentage of the Project Success Bonuses[2] from Penn Commerce and a deal in California referred to as Condor. To the extent the allegations in paragraph 20 of the Complaint are inconsistent with the foregoing recitation of facts, they are denied.

21.     Denied.

22.     Denied.

23.     Glagola denies the allegations in paragraph 23 of the Complaint as they mischaracterize the agreement and the parties involved.

24.     Denied.

---

[2] In the Transwestern Lawsuit, this Court and the parties adopted the term "Project Success Bonus" to refer to the money that CalSTRS would pay (and ultimately *did* pay) the TDC Companies when the projects were developed successfully. At times, this payment has been referred to as the "promote," the "promoted interest," the "incentive fee," and "distributable proceeds." For consistency purposes, Glagola will refer to this payment as the "Project Success Bonus." The use of this term is intended to be synonymous to any term that describes the payment that CalSTRS paid the TDC Companies for Penn Commerce Phase 1 and Condor, and will pay the TDC Companies for Penn Commerce Phase 2.

25.     Glagola admits the allegation in paragraph 25 of the Complaint that he terminated his relationship with TCS but denies that it occurred in June 2020. To the extent that the allegation in paragraph 25 regarding Glagola's "relationship" with Plaintiff refers to the alleged agreement attached as Exhibit 1 to the Complaint, Glagola admits that the agreement signed by Glagola and Plaintiff in 2018 was terminated but denies that such termination did not occur until June 2020. The alleged agreement attached as Exhibit 1 was superseded by subsequent agreements, the last of which was ultimately terminated.

26.     Glagola does not have sufficient knowledge to admit or deny and therefore denies the allegations in paragraph 26 of the Complaint.

27.     Denied.

28.     Glagola admits the allegation in paragraph 28 of the Complaint that his pleadings in the Transwestern Lawsuit did not reference a "Split Agreement" with Plaintiff. Glagola denies the remaining allegations in paragraph 28 of the Complaint. Glagola's pleadings and filings in the Transwestern Lawsuit speak for themselves.

29.     Denied.

30.     Denied.

31.     The allegations in paragraph 31 of the Complaint purport to explain Plaintiff's reason for filing this lawsuit and require no response. To the extent a response is required, the allegations in paragraph 31 of the Complaint are denied.

32.     The foregoing responses are incorporated herein by reference as if fully stated herein.

33.     Paragraph 33 of the Complaint contains a statement of law to which no response is required. To the extent a response is required, paragraph 33 is denied.

34. Paragraph 34 of the Complaint contains a statement of law to which no response is required. To the extent a response is required, paragraph 34 is denied.

35. Denied.

The "WHEREFORE" clause following paragraph 35 of the Complaint requires no response. To the extent a response is required, Glagola denies that Plaintiff is entitled to any of the relief requested.

36. The foregoing responses are incorporated herein by reference as if fully stated herein.

37. Denied.

38. Denied.

39. Denied.

40. Glagola denies the allegations in paragraph 40 of the Complaint, as they are based on a false premise, that being the existence of a contractual obligation owed by Glagola regarding monies Glagola may receive as a result of the judgment entered in the Transwestern Lawsuit.

41. Paragraph 41 of the Complaint contains a statement of law to which no response is required. To the extent a response is required, paragraph 41 is denied.

42. Paragraph 42 of the Complaint contains a statement of law to which no response is required. To the extent a response is required, paragraph 42 is denied.

The "WHEREFORE" clause following paragraph 42 of the Complaint requires no response. To the extent a response is required, Glagola denies that Plaintiff is entitled to any of the relief requested.

## Affirmative Defenses

### *First Defense*

Plaintiff's Complaint fails to state a claim upon which relief can be granted.

### Second Defense

Plaintiff's claims fail because no enforceable legal contract exists between Glagola and Plaintiff.

### Third Defense

Plaintiff's claims fail because the alleged contract is missing material terms.

### Fourth Defense

Plaintiff's claims fail because of a lack of specificity in the terms of the alleged contract.

### Fifth Defense

Plaintiff's claims fail due to a lack of a meeting of the minds.

### Sixth Defense

Plaintiff's claims are barred by the doctrine of equitable estoppel.

### Seventh Defense

Plaintiff's claims are barred by the doctrine of waiver.

### Eighth Defense

Plaintiff's claims are barred by the doctrine of release.

### Ninth Defense

Plaintiff's claims are barred by the doctrine of accord and satisfaction.

### Tenth Defense

Plaintiff's claims are barred by the doctrine of unclean hands.

### Eleventh Defense

Plaintiff's claims fail because the alleged contract attached as Exhibit 1 to Plaintiff's Complaint is not legally enforceable as it was superseded by at least one subsequent agreement between Plaintiff and Glagola.

### Twelfth Defense

Plaintiff's claims fail because, prior to Glagola and Plaintiff entering into an agreement to terminate their relationship, any agreement between Glagola and Plaintiff concerned each party's obligation with respect to overhead expenses and the allocation of the portion of commissions and fees earned by TCS for services performed by Plaintiff and/or Glagola that would be distributed to Glagola and/or Plaintiff.

### Thirteenth Defense

Plaintiff's claims fail because Glagola and Plaintiff never entered into agreement whereby either party agreed to share with the other proceeds stemming from either party's investments or direct agreements with third-parties (including other Transwestern entities), which were separate and apart from commissions earned by TCS for services performed by Glagola and/or Plaintiff.

### Fourteenth Defense

Plaintiff's claims fail because any agreements between Plaintiff and Glagola were terminated, and Plaintiff and Glagola waived any rights to monies received by the other following said termination.

### Fifteenth Defense

Without waiving any of the foregoing defenses, and assuming, *arguendo*, that the document attached as Exhibit 1 is deemed enforceable and that the "splits" for 2018 and 2019 identified therein do not only apply to the allocation of commissions earned by TCS for services performed by Plaintiff and/or Glagola, Plaintiff's claims still fail because any money earned by Glagola that is the subject of the Transwestern Lawsuit was not earned until December 2021 (with respect to Penn Commerce Phase 1 and Condor) or has not yet been earned (with respect to Penn Commerce Phase 2) and thus would not be subject to the document attached as Exhibit 1 to

Plaintiff's Complaint.

### Sixteenth Defense

Without waiving any of the foregoing defenses, and assuming, *arguendo*, that the document attached as Exhibit 1 is deemed enforceable and that the "splits" for 2018 and 2019 identified therein do not only apply to the allocation of commissions earned by TCS for services performed by Plaintiff and/or Glagola, Plaintiff's claims still fail because Plaintiff and Glagola superseded their 2018 agreement with at least one subsequent agreement and ultimately terminated any agreement they had with each other, and, in so doing, terminated any obligation that either party had to the other.

### Seventeenth Defense

Without waiving any of the foregoing defenses, and assuming, *arguendo*, that the monies owed to Glagola pursuant to the judgment in the Transwestern Lawsuit are adjudged to be subject to any agreement between Plaintiff and Glagola, which agreements Glagola maintains only applied to the parties' agreed upon allocation of commissions earned by TCS for services performed by Glagola and/or Plaintiff, any recovery by Plaintiff should be set off by monies received by Plaintiff from his direct, personal agreements with third-parties during the time period it is adjudged that the parties' had such an agreement and pursuant to the allocation adjudged to be in effect at the time.

### Eighteenth Defense

Without waiving any of the foregoing defenses, and assuming, *arguendo*, that the monies owed to Glagola pursuant to the judgment in the Transwestern Lawsuit are adjudged to be subject to any agreement between Plaintiff and Glagola, which agreements Glagola maintains only applied to the parties' agreed upon allocation of commissions earned by TCS for services performed by

Glagola and/or Plaintiff, any recovery by Plaintiff should be set off by commissions, which, like monies owed to Glagola under the May 29 Agreement, were not collectible by Plaintiff until after the termination of his and Glagola's relationship but which are deemed to stem from deals that Trainor brokered while he and Glagola had an active agreement.

### Nineteenth Defense

Plaintiff's alleged injuries, if any, were the direct result of the actions or inactions of Plaintiff.

### Twentieth Defense

Plaintiff's alleged injuries, if any, were the direct result of the actions or inactions of a third party.

### Twenty-First Defense

Plaintiff's claims fail because he does not have standing. Any agreement between Plaintiff and Glagola only pertained to the allocation of commissions earned by TCS and were subject to the express approval of TCS, such that he would not have a direct cause of action against Glagola.

### Additional Defenses

Glagola may have other defenses available to him of which he is not currently aware. Accordingly, Glagola reserves the right to amend his Answer to assert additional affirmative defenses in the event discovery and/or further investigation reveals such defenses.

**WHEREFORE**, for the foregoing reasons, Defendant/Counter-Plaintiff/Cross-Plaintiff, Mark Glagola, requests that this Court enter an Order dismissing Plaintiff's Complaint and granting him such other relief it deems just and proper.

**COUNTERCLAIM AGAINST PLAINTIFF/CROSS-DEFENDANT, GERALD TRAINOR AND COUNTERCLAIM-DEFENDANTS, TDC LOGISTICS COMPANY, LLC AND TRANSWESTERN CAREY WINSTON, LLC,**

**AND**

**CROSS-CLAIM AGAINST DEFENDANT/CROSS-DEFENDANT, TRANSWESTERN DEVELOPMENT COMPANY, LLC**

Defendant/Counter-Plaintiff/Cross-Plaintiff Mark Glagola ("Glagola"), by and through his attorneys, pursuant to Rule 13 of the Federal Rules of Civil Procedure, files this Counterclaim against Plaintiff/Counter-Defendant, Gerald Trainor ("Trainor"), and Counterclaim-Defendants, TDC Logistics Company, LLC f/k/a Ridge Development Company, LLC ("TDC Logistics") and Transwestern Carey Winston, LLC t/a Transwestern Commercial Services ("TCS"), and Cross-Claim against Defendant/Cross-Defendant Transwestern Development Company, LLC ("TDC" and together with TDC Logistics, the "TDC Companies"), and states as follows:

<u>**Parties, Jurisdiction and Venue**</u>

1.      Glagola is an adult individual and a resident of the State of Maryland.

2.      Counter-Defendant Trainor is an adult individual and a resident of the State of Virginia.

3.      Cross-Defendant TDC is a Delaware limited liability company that maintains its principal place of business in the State of Texas.

4.      Counterclaim-Defendant TDC Logistics is a Delaware limited liability company that maintains its principal place of business in the State of Texas. It is being joined in this action pursuant to Rules 13(h), 19, and 20 of the Federal Rules of Civil Procedure because (1) it has an interest in the subject matter of this lawsuit and disposing of this action in its absence would subject Glagola to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest, (2) a right to relief is asserted against it jointly, severally, or in the

alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences, and (3) a question of law or fact common to all defendants will arise in the action.

5.      Counterclaim-Defendant TCS is a Delaware limited liability company that maintains its principal place of business in the State of Texas. It is being joined in this action pursuant to Rules 13(h), 19, and 20 of the Federal Rules of Civil Procedure because (1) it has an interest in the subject matter of this lawsuit and disposing of this action in its absence would subject Glagola to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest, (2) a right to relief is asserted against it jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences, and (3) a question of law or fact common to all defendants will arise in the action.

6.      This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a) because the amount in controversy exceeds $75,000 and Glagola, a citizen of Maryland, is of a different citizenship than Counter-Defendant Trainor (a citizen of Virginia), as well as Cross-Defendant TDC, and Counterclaim-Defendants, TDC Logistics and TCS (TDC, TDC Logistics and TCS each being a Delaware entity that maintains a principal office in Texas and whose members are citizens of Texas).

7.      This Court has personal jurisdiction over Trainor, TDC, TDC Logistics, and TCS pursuant to Md. Code Ann., Cts. & Jud. Proc § 6-103(b)(2), because they transact business and perform work and services in the State of Maryland.

8.      Venue is proper under 28 U.S.C. § 1391(b)(3).

## Facts Common to All Counts

9.     For over a decade, Glagola worked as an independent contractor for TCS, where he brokered the sale and leasing of commercial properties, initially pursuant to an Independent Contractor Agreement dated August 16, 2007 ("2007 Independent Contractor Agreement") and, subsequently, pursuant to a Qualified Real Estate Agent Agreement dated March 1, 2019 ("2019 Independent Contractor Agreement"). (Ex. A – 2007 Independent Contractor Agreement; Ex. B – 2019 Independent Contractor Agreement).

10.    During the entire time that Glagola worked as an independent contractor for TCS, Counter-Defendant Trainor was also an independent contractor for TCS who likewise brokered the sale and leasing of commercial properties. Upon information and belief, Trainor, along with other independent contractors engaged by TCS, also entered into an independent contractor agreement with TCS in 2019 that is substantially the same, if not identical, to Glagola's 2019 Independent Contractor Agreement.

11.    With respect to compensation, Glagola's 2019 Independent Contractor Agreement with TCS provided that he would be entitled to a portion of commissions (or brokerage revenues) earned by TCS for services performed by Glagola after commissions were received by TCS, in which case, commissions would be disbursed to Glagola in accordance with TCS's commission disbursement procedures. (Ex. B at §4(b)).

12.    TCS's commission disbursement procedures were set forth in Exhibit A to the 2019 Independent Contractor Agreement. Glagola's base participation percentage for commissions would be determined according to the total gross commissions earned by TCS for services provided by Glagola in a calendar year, pursuant to the following schedule:

| COMMISSION STRUCTURE | |
| --- | --- |
| **Calendar Year Gross Commissions** | **Base Participation** |

| | |
|---|---|
| $0 to $300,00 | 50.0% |
| $300,001 to $450,000 | 55.5% |
| $450,001 to $750,000 | 60.0% |
| $750,001 to $1,000,000 | 65.0% |
| $1,000,000+ | 70.0% |

(Ex. B at Exhibit A, p. 1). TCS's payments to Glagola of his commissions would be on an "as collected basis." (Ex. B at Exhibit A, §(C)).

13.     In or around 2016, Glagola and Trainor agreed to pool their resources for their brokerage efforts to earn commissions through TCS as a team called "Mid-Atlantic Capital Markets Group." Glagola and Trainor's initial agreement covered how they would share overhead expenses—including paying salary and bonuses to junior staffers—as well as how they would split commissions.

14.     Glagola's and Trainor's arrangement, which was subject to approval by TCS, would dictate how the portion of commissions or fees earned by TCS for services performed by Glagola and/or Trainor would be divided between Glagola and Trainor.

15.     The practice of two or more brokers teaming up to broker deals on behalf of a company and divvying up the portion of the commissions earned by the company that is attributable to the brokers is common in the commercial real estate industry. Glagola's—and upon information and belief, Trainor's—2019 Independent Contractor Agreement expressly contemplated these arrangements.

16.     Exhibit A to the 2019 Independent Contractor Agreement provided that Glagola and "any other producers for a particular transaction, if any, shall agree on how to allocate between or among themselves the brokerage revenues anticipated to be received by [TCS] for a particular transaction." Such arrangements were subject to TCS's "sole discretion and final, written approval." (Ex. B at Exhibit A, §(A)(i)). The commission structure set forth in Exhibit A to the

2019 Independent Contractor Agreement applied to all transactions closed after March 1, 2019. (Ex. B at Exhibit A, §(D)).

17.     Glagola and Trainor reduced their arrangement to writing on multiple occasions, including in 2018, a copy of which is attached as Exhibit 1 to Trainor's Complaint ("2018 Glagola/Trainor Agreement"). The 2018 Glagola/Trainor Agreement was amended in writing at least twice, and Glagola and Trainor verbally agreed to exceptions to their arrangement on numerous transactions. Any and all allocations of commissions subject to Glagola's and Trainor's arrangement were communicated to and subject to the approval of TCS for each transaction. Glagola and Trainor eventually terminated their relationship.

18.     From 2016 until their arrangement was terminated, Glagola's and Trainor's agreements solely addressed how Glagola and Trainor would split their portion of commissions earned by TCS for services provided by Glagola and/or Trainor on behalf of TCS. Their arrangement, including the 2018 Glagola/Trainor Agreement, typically estimated anticipated shared expenses based on gross commissions and their split with the "house," which referred to the amount that TCS (aka the "house") would take from gross commissions earned by Glagola and/or Trainor.

19.     Similar to how Glagola's—and upon information and belief, Trainor's— commissions were paid on an "as collected" basis, whereby base participation percentages for commissions were determined based on the total gross commissions collected in a calendar year (Ex. B at Exhibit A, p. 1), the commission "splits" that Glagola and Trainor agreed to for any given year applied to the year that the commission was booked and collectible. For instance, the percentages set forth for 2018 in Exhibit 1 to Trainor's Complaint would be applied to commissions booked and collectible in 2018, and the percentages set forth for 2019 would be

applied to commissions booked and collectible in 2019. Records of all transactions brokered by Glagola and Trainor on behalf of TCS from 2016 through 2020 will demonstrate this.

20.    Glagola's—and, upon information and belief, Trainor's—2019 Independent Contractor Agreement expressly contemplated participation in outside investments, businesses and other ventures. Specifically, it provided as follows:

> (d) Nothing contained in this Agreement shall be deemed to prohibit or preclude the AGENT's participation in or ownership of other businesses, ventures, enterprises, or other investments, so long as such activities do not materially and adversely inhibit the AGENT's ability to perform the AGENT's obligations and responsibilities hereunder. All such activities and ownership interests shall be disclosed to the Company in writing.

(Ex. B at § 3(d)). Such outside investments and ventures were common among brokers at TCS, including Trainor, before and after the 2019 Independent Contractor Agreement.

21.    During his time as an independent contractor with TCS, Glagola helped broker transactions involving other entities in the Transwestern family of companies, including the TDC Companies. Although legally separate entities, TCS and the TDC Companies are each a part of the Transwestern family of companies, sharing, among other things, accounting, executives, and owners. Trainor also brokered deals on behalf of TCS with other Transwestern entities like the TDC Companies.

22.    When Glagola brokered deals with the TDC Companies, he would request or be offered the opportunity to participate in the proceeds of various projects by investing in them. In most cases, a private placement offering[3] would be issued to Glagola, and he would be given the opportunity to invest as an "accredited investor"[4] in a single-purpose entity created specifically for

---

[3] A private placement offering allows a company to raise funds by selling securities to a small group of investors, rather than to the general public.

[4] An "accredited investor" is someone who meets certain financial or professional requirements set by the Securities and Exchange Commission (SEC) pursuant to Regulation D under the Securities Act of 1933. *See* 17 C.F.R. § 230.501. Private placement offerings for

the project. The money he would make on these deals was separate and apart from whatever compensation he received as an independent contractor for TCS out of the commission that TCS earned. Trainor, likewise, was given the opportunity to invest in projects that he helped broker for the TDC Companies on behalf of TCS. These outside deals were excluded from Glagola's and Trainor's arrangement, as they did not involve commissions earned by TCS. To the extent that Trainor entered into similar deals with third parties outside the Transwestern family of companies, those, too, would not be subject to any arrangement Glagola and Trainor had at the time, because those did not involve commission earned by TCS. Similarly, TCS did not participate in any gains or losses that Glagola realized on his outside deals with the TDC Companies.

23.    Glagola's deals with the TDC Companies were disclosed to and approved by TCS and were not considered "commissions" that would have to be paid to TCS and from which TCS would take its "cut" or which would be divvied up with other TCS brokers. Whereas transactions brokered by Glagola and/or Trainor on behalf of TCS would be tracked and forecasted by TCS, outside personal deals that Glagola or Trainor had with third parties like the TDC Companies were not tracked, as TCS did not have any interest in the proceeds from those outside deals.

24.    In 2018, the TDC Companies[5] owned a parcel of land in Newell, Pennsylvania under consideration for development known as the Penn Commerce project ("Penn Commerce"), for which they had been unsuccessful in finding an equity partner to help fund its development. Glagola got involved and helped revive the stagnant project, by helping facilitate a lucrative joint venture between the TDC Companies and the California State Teachers' Retirement System

---

accredited investors are exempt from registration with the SEC pursuant to Section 4(2) of the Securities Act. *See* 15 U.S.C.A. § 77d(2).

[5] The land involved in the Penn Commerce project was specifically under contract with TDC Logistics (then known as Ridge Development Company, LLC). Because TDC and TDC Logistics indicated in the Transwestern Lawsuit that they were one in the same, they were treated as such. Accordingly, they will be treated the same in this pleading and referred to as the TDC Companies.

("CalSTRS"), whereby CalSTRS would put up 100% of the equity for the development of the project and the TDC Companies would receive a developer fee and a Project Success Bonus when the project was stabilized. The TDC Companies and CalSTRS would later join forces for another joint venture project, this time in California, which was referred to as the Condor Project ("Condor").

25.     After the Penn Commerce joint venture closed in August 2018, TCS earned a $250,000 commission from TDC Logistics. After the commission was paid to TCS in September 2018, 10% (or $25,000) was allocated to TCS Executive Walter Byrd's team, 62.5% (or $140,625) was allocated to Trainor, and 37.5% (or $84,375) was allocated to Glagola, as per Glagola's and Trainor's arrangement with respect to splitting commission earned by TCS. However, these numbers represented the gross commissions earned by Glagola and Trainor. For this particular transaction, TCS (aka the "house') took approximately 20% off of each participant's share (for a total sum of approximately $50,000). Accordingly, Glagola's net commission for this particular deal was $67,576.69 (80.09% of $84,375).

26.     Before the joint venture was finalized, Glagola and the TDC Companies discussed how he would participate in the proceeds from the projects. The deals with CalSTRS were unique in that there would be no opportunity to invest because CalSTRS was funding 100% of the equity for the projects. Nevertheless, the TDC Companies and Glagola agreed that he would participate in the proceeds.

27.     For months, the TDC Companies dragged their feet when it came to finalizing the agreement's terms, initially indicating that they intended to incorporate Glagola's participation in proceeds in a broader agreement referred to as an "MLP" (or a "Master Limited Partnership"). The parties disagreed regarding how much Glagola should receive, the projects from which he would

be paid, and how the agreement would be structured. Glagola's frustration with the TDC Companies' delay was no secret among his colleagues at TCS, including Trainor. Emails between the professionals at TCS will demonstrate this.

28.     But, after several rounds of negotiations with the TDC Companies, and a demand by Glagola to resolve his "issue/claim" with the TDC Companies, the parties reached an accord. On May 29, 2019, the TDC Companies emailed Glagola to "memorialize" the deal, in which the TDC Companies would pay Glagola 5% of the Project Success Bonus it received for Penn Commerce Phase 1, 5% of the Project Success Bonus it received for Penn Commerce Phase 2 (if the TDC Companies ended up being the developer on that phase of the project), and 2% of the Project Success Bonus for Condor (the "May 29 Agreement"). Glagola accepted the terms, which the TDC Companies forwarded to their accounting department to be tracked along with Glagola's investments.

29.     In September 2020, Glagola and TCS agreed to part ways and executed a Termination Agreement. By that time, Glagola and Trainor had also terminated their relationship, a process in which they identified any transactions in which they would be splitting commissions, thus having no obligation to each other concerning transactions that were not specifically identified.

30.     In November 2020, the TDC Companies informed Glagola that they would not be honoring their payment obligation under the May 29 Agreement.

31.     Glagola filed suit against the TDC Companies on May 19, 2021 in Civil Action No. 1:21-cv-01230-JMC ("Transwestern Lawsuit").

32.     On or about December 14, 2021, during the pendency of the Transwestern Lawsuit, the TDC Companies received Project Success Bonuses in the amount of $24,472,405 for Penn

Commerce Phase 1 and $5,504,754 for Condor and confirmed that they were the developer for Penn Commerce Phase 2.

33.     On July 25, 2022, this Court issued a memorandum opinion and order in the Transwestern Lawsuit granting judgment in favor of Glagola and against the TDC Companies, awarding damages in the total amount of $1,333,715.33 plus prejudgment interest, and declaring that Glagola was entitled to 5% of the Project Success Bonus that the TDC Companies would be receiving for Penn Commerce Phase 2, which was still pending.

34.     The TDC Companies noted an appeal, which is currently pending before the United States Court of Appeals for the Fourth Circuit.

## COUNT I – DECLARATORY JUDGMENT
### (Against Trainor, TDC, TDC Logistics and TCS)

35.     Glagola adopts and incorporates the preceding paragraphs as if fully set forth herein.

36.     This is an action for declaratory judgment regarding the scope and enforceability of the 2018 Glagola/Trainor Agreement attached as Exhibit 1 to Trainor's Complaint, the scope and enforceability of any other agreement between Trainor and Glagola, the effect of Trainor's and Glagola's respective independent contractor agreements with TCS on any alleged agreement between Trainor and Glagola, Trainor and Glagola's compliance with their respective independent contractor agreements with TCS, and Trainor's and Glagola's rights with respect to the monies and other relief awarded by this Court against TDC and TDC Logistics in the Transwestern Lawsuit.

37.     With respect to the allocation of money, every agreement between Glagola and Trainor—including the the 2018 Glagola/Trainor Agreement—only pertained to how Glagola and Trainor agreed to split their collective portion of commissions earned by TCS for services

performed by Glagola and/or Trainor.

38.     In every agreement between Glagola and Trainor—including the 2018 Glagola/Trainor Agreement—Glagola and Trainor never agreed to split monies earned by each other pursuant to direct investments and other agreements with third parties. TCS records from 2016 through the present will demonstrate this.

39.     The 2018 Glagola/Trainor Agreement only addressed Glagola's and Trainor's agreed-upon splits for commissions collected by TCS in calendar years 2018 and 2019; it was not applicable to commissions (or any monies) paid to TCS (or anyone else) in calendar years subsequent to 2019.

40.     The 2018 Glagola/Trainor Agreement was subsequently amended and superseded in writing by Trainor and Glagola at least two times and is no longer in force or effect.

41.     Glagola and Trainor ultimately agreed to terminate their relationship prior to Glagola parting ways with TCS in September 2020, thereby rendering any agreement between them of no force and effect with the exception of transactions for which Glagola and Trainor specifically agreed to split commissions that were paid after the termination of their relationship. Glagola and Trainor otherwise had no obligations to each other.

42.     With respect to the Penn Commerce deal, Glagola honored his agreement with Trainor and split the commission earned by TCS in accordance with their agreed-upon allocation of commissions.

43.     Glagola's May 29 Agreement with the TDC Companies was the result of several months of negotiations between Glagola and the TDC Companies and arose out of the unique aspects of the TDC Companies' deal with CalSTRS, whereby Glagola was not able to invest in the project as he had in past projects. The May 29 Agreement was disclosed to TCS, and Glagola's

negotiations—and, at times, frustrations—with the TDC Companies leading up to it was well known by Glagola's TCS colleagues, including Trainor. Like Glagola's prior investments in the TDC Companies' projects, the May 29 Agreement was expressly contemplated and permitted by Glagola's 2019 Independent Contractor Agreement.

44.     Because the May 29 Agreement did not concern the payment of commissions earned by TCS for services performed by Glagola or Trainor, the monies that would be due to Glagola under the May 29 Agreement were not subject to any agreement between Glagola and Trainor, including the 2018 Glagola/Trainor Agreement. Accordingly, Trainor has no interest in the monies due to Glagola under the May 29 Agreement.

45.     To the extent that Trainor had any right to a portion of monies payable to Glagola, it was only to commissions first earned and collected by TCS, which were actually covered by an agreement between Glagola and Trainor. In such case, Trainor's rights are secondary to TCS, which unequivocally has not asserted any interest in the monies due to Glagola under the May 29 Agreement, and effectively waived the right to assert such an interest by not intervening in the Transwestern Lawsuit, which involved party-Defendants (TDC and TDC Logistics) that share accounting, executives, and owners with TCS.

46.     By suing Glagola directly, Trainor has failed to comply with his independent contractor agreement with TCS, which places agreements between producers concerning the allocation of "brokerage revenues" (i.e., commissions) subject to the "sole discretion and final, written approval" of TCS and requires disputes to be resolved by TCS. Further, under the 2019 Independent Contractor Agreement, TCS had the sole discretion to determine which broker was a producer for a given transaction and a broker's allocation percentage for a transaction.

47.     Glagola fully complied with his 2019 Independent Contractor Agreement with

TCS, as he split the $250,000 commission earned by TCS on the Penn Commerce deal in accordance with his agreement with Trainor and as approved expressly by TCS. Further, his May 29 Agreement with the TDC Companies, like his prior investments in their projects, was disclosed to TCS and expressly contemplated by his 2019 Independent Contractor Agreement.

48.     The May 29 Agreement is a personal agreement between Glagola and the TDC Companies, which is not subject to any agreement between Glagola and Trainor. As a result, Trainor has no interest in the monies due to Glagola under the May 29 Agreement or the judgment entered in the Transwestern Lawsuit.

49.     Notwithstanding the lack of merit in Trainor's claims against Glagola, there now exists an actual and immediate controversy concerning the parties' rights and obligations surrounding the scope and enforceability of the 2018 Glagola/Trainor Agreement attached as Exhibit 1 to Trainor's Complaint, the scope and enforceability of any other agreement between Trainor and Glagola, the effect of Trainor's and Glagola's respective independent contractor agreements with TCS on any alleged agreement between Trainor and Glagola, Trainor and Glagola's compliance with their respective independent contractor agreements with TCS, and Trainor's and Glagola's rights with respect to the monies and other relief awarded by this Court against TDC and TDC Logistics in the Transwestern Lawsuit.

50.     There is thus a bona fide, actual, present, practical need for a declaration, which deals with a present, ascertained or ascertainable state of facts or present controversy as to a state of facts and will terminate a controversy and remove an uncertainty.

**WHEREFORE**,  Defendant/Counter-Plaintiff/Cross-Plaintiff  Plaintiff,  Mark  Glagola, respectfully requests that this Court enter an order:

A.      Finding and declaring that: (1) the 2018 Glagola/Trainor Agreement is of no force

and effect; (2) that every agreement between Glagola and Trainor concerned only the allocation of commissions earned by TCS for services performed by Glagola and/or Trainor and did not concern agreements or investments that Glagola or Trainor entered into with third parties like the TDC Companies; (3) that Glagola and Trainor terminated their relationship and any agreement between them such that, regardless of the terms of Glagola and Trainor's operative agreement, Trainor had no rights to any monies due to Glagola under his May 29 Agreement with the TDC Companies; (4) that no agreement between Glagola and Trainor concerned monies (commissions or otherwise) that were not collectible until 2021 or beyond, such that Glagola had no obligation to Trainor with respect to the money owed to Glagola under the May 29 Agreement, which did not become due and owing until December 2021 or later; (5) that Glagola complied with his 2019 Independent Contractor Agreement with TCS; and (6) that Trainor did not comply with his independent contractor agreement with TCS;

B.     Awarding Glagola his costs and attorney's fees; and

C.     Granting Glagola any and such further relief that this Court deems just and proper.

### COUNT II – SET OFF AND/OR RECOUPMENT (*IN THE ALTERNATIVE*)
### (Against Trainor)

51.     Glagola adopts and incorporates the preceding paragraphs as if fully set forth herein.

52.     The agreements between Glagola and Trainor—including the 2018 Glagola/Trainor Agreement—did not concern Glagola's or Trainor's personal, direct investments and agreements with third parties, including the TDC Companies. Accordingly, the monies owed to Glagola under the May 29 Agreement with the TDC Companies are not subject to any agreement between Glagola and Trainor. Likewise, Trainor's direct deals and investments with third parties, including the TDC Companies, would not be subject to any agreement between him and Glagola.

53.     Similarly, by the time monies owed to Glagola under the May 29 Agreement could be collected, it was December 2021 and Glagola's and Trainor's relationship had been terminated over a year prior. No agreement between Glagola and Trainor concerned monies (commissions or otherwise) that were collected (or to be collected) in 2021 or beyond. Further, following the termination of their relationship, Glagola and Trainor waived any interest in monies earned (commissions or otherwise) by the other unless specifically identified in writing.

54.     During the time that Glagola and Trainor had an agreement, Trainor participated in deals and investments with third parties (including the TDC Companies), and he did not share the proceeds from those deals and investments with Glagola. Likewise, upon information and belief, Trainor received monies from transactions that were collected following the termination of Glagola's and Trainor's relationship (as well as the termination of Glagola's independent contractor agreement with TCS), which he did not share with Glagola.

55.     However, in the event that this Court was to determine that either

(1)  Glagola's and Trainor's agreement entitled each person to a portion of monies received by the other pursuant to direct deals and investments with third parties (including with the TDC Companies) and not just commissions earned by TCS,

(2)  Glagola's and Trainor's agreement applied to monies collected (commissions or otherwise) in December 2021 or later,

(3)  Glagola and Trainor did not waive any interest in monies earned or collected by the other following the termination of their relationship, and/or

(4)  Trainor is entitled to share in the monies owed to Glagola under the May 29 Agreement or the judgment in the Transwestern Lawsuit,

Glagola pleads, *in the alternative*, a claim for setoff and/or recoupment. Because, if Glagola's and

Trainor's agreement is interpreted in a manner that would lead to any one of the foregoing results, then there would be myriad occurrences of Trainor failing to share proceeds with Glagola.

56.     In the event that Trainor is adjudged to be entitled to any damages, then Glagola is entitled to a set off from such damages in an amount equal to the damages incurred by Glagola caused by Trainor's failure to share proceeds with Glagola.

57.     Glagola reiterates that this claim is pleaded *in the alternative* to his declaratory judgment claim.

**WHEREFORE**, Defendant/Counter-Plaintiff/Cross-Plaintiff, Mark Glagola, respectfully requests that, in the event that Trainor is awarded damages in this action, such damages be set off in an amount equal to the damages incurred by Glagola, and that this Court grant such other relief in favor of Glagola as the Court deems just and proper.

**COUNT III – ACCOUNTING (*IN THE ALTERNATIVE*)**
**(Against Trainor)**

58.     Glagola adopts and incorporates the preceding paragraphs as if fully set forth herein.

59.     The agreements between Glagola and Trainor—including the 2018 Glagola/Trainor Agreement—did not concern Glagola's or Trainor's personal, direct investments and agreements with third parties, including the TDC Companies. Accordingly, the monies owed to Glagola under the May 29 Agreement with the TDC Companies are not subject to any agreement between Glagola and Trainor. Likewise, Trainor's direct deals and investments with third parties, including the TDC Companies, would not be subject to any agreement between him and Glagola.

60.     Similarly, by the time monies owed to Glagola under the May 29 Agreement could be collected, it was December 2021 and Glagola's and Trainor's relationship had been terminated over a year prior. No agreement between Glagola and Trainor concerned monies (commissions or

otherwise) that were not collectible until in 2021 or beyond. Further, following the termination of their relationship, Glagola and Trainor waived any interest in monies earned (commissions or otherwise) by the other unless specifically identified in writing.

61. An accounting may be ordered where the plaintiff demonstrates that a relationship of trust and confidence exists between he and the defendant. In this case, a relationship of trust and confidence existed between Glagola and Trainor regarding their sharing of commissions and expenses as part of the Mid-Atlantic Capital Markets Group they formed while colleagues at TCS.

62. During the time that Glagola and Trainor had an agreement, Trainor participated in deals and investments with third parties (including the TDC Companies), and he did not share the proceeds from those deals and investments with Glagola. Likewise, upon information and belief, Trainor received monies from transactions that were collected following the termination of Glagola's and Trainor's relationship (as well as the termination of Glagola's independent contractor agreement with TCS), which he did not share with Glagola.

63. In the event that this Court was to determine that either

(1) Glagola's and Trainor's agreement entitled each person to a portion of monies received by the other pursuant to direct deals and investments with third parties (including with the TDC Companies) and not just commissions earned by TCS,

(2) Glagola's and Trainor's agreement applied to monies collected (commissions or otherwise) in December 2021 or later,

(3) Glagola and Trainor did not waive any interest in monies earned or collected by the other following the termination of their relationship, and/or

(4) Trainor is entitled to share in the monies owed to Glagola under the May 29 Agreement or the judgment in the Transwestern Lawsuit,

Glagola pleads, *in the alternative*, a claim for an accounting. Because, if Glagola's and Trainor's agreement is interpreted in a manner that would lead to any one of the foregoing results, then there would be myriad occurrences of Trainor failing to share proceeds with Glagola for which an accounting would be necessary.

64.     In such an event, an accounting must be ordered to determine the proper allocation of monies received by Trainor that the Court deems to be subject to Glagola's and Trainor's agreement by reviewing every transaction brokered by Trainor on behalf of TCS from 2016 forward, as well as reviewing any investments and deals between Trainor and third parties like the TDC Companies during that same time period, and said sums should be reduced to a judgment against Trainor and in favor of Glagola in accordance with the agreed upon allocation in effect at the time said monies were received by Trainor.

65.     Glagola reiterates that this claim is pleaded *in the alternative* to his declaratory judgment claim.

**WHEREFORE**, Defendant/Counter-Plaintiff/Cross-Plaintiff, Mark Glagola, respectfully requests that this Court enter an order directing Counter-Defendant Trainor to completely and fully account for all sums of money received by him for commissions, as well as from personal deals, agreements and investments with third parties (including the TDC Companies) for whom he provided services on behalf of TCS from 2016 through the present, and that, after applying Glagola's agreed-upon percentage in effect at the time said monies were received by Trainor, reduce the total sum to a judgment against Trainor and in favor of Glagola, and grant such other relief in favor of Glagola as the Court deems just and proper.

Respectfully submitted,

By:     */s/ N. Tucker Meneely*
N. Tucker Meneely, Fed. Bar No. 29622
COUNCIL, BARADEL,
KOSMERL & NOLAN, P.A.
125 West Street, Fourth Floor
Annapolis, Maryland 21401
(410) 268-6600
(410) 269-8409 Fax
Meneely@CouncilBaradel.com
*Attorneys for Mark Glagola*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing paper and attachments was served on all parties registered to receive electronic service in this action and was mailed via first-class mail to Defendant/Cross-Defendant, Transwestern Development Company, 1900 West Loop Road, Suite 1300, Houston, Texas 77027.

*/s/ N. Tucker Meneely*
N. Tucker Meneely, Fed. Bar No. 29622