TRANSWESTERN CAREY WINSTON, llC,
d/b/a TRANSWESTERN
INDEPENDENT CONTRACTOR AGREEMENT

THIS INDEPENDENT CONTRACTOR AGREEMENT (the "Agreement") is made, effective as of August 16, 2007, by and between TRANSWESTERN+CAREY WINSTON, LLC, d/b/a TRANSWESTERN, a Delaware limited liability company {"COMPANY"), and MARK J. GLAGOLA {CONTRACTOR").

| | |
|---|---|
| Name: Mark J. Glagola<br>Horne Address: 118 Cedar Raad<br>City: Severna Park, MD 21146<br>Telephone:<br>Real Estate License(s)   MD   VA   DC   OTHER<br>     Nurnber(s) ____   State _____<br>     _____   _____<br>     _____   _____<br>{herein referred to as "CONTRACTOR") | TRANSWESTERN CAREY WINSTON, llC, d/b/a TRANSWESTERN<br>HEADQUARTERED AT:<br>*6700* Rockledge Drive<br>Suite 400A<br>Bethesda, Maryland 20817<br><br>BRANCH OFFICE:     COL<br><br>{herein referred to as "COMPANY") |

## RECITALS

A. WHEREAS, the Company currently is engaged in business as a commercial Realtor.

B. WHEREAS, the CONTRACTOR is licensed by the appropriate regulatory authorities in the State of Maryland as a real estate salesperson or broker.

C. WHEREAS, the Company and the CONTRACTOR now desire to enter into an agreement to provide for the establishment of an independent contractor relationship between them for services to be performed by the CONTRACTOR as a commissioned real estate agent, which services are directly related to sales and leasing of real property, or other output.

## COVENANTS

NOW, THEREFORE, in consideration of the Recitals, which are incorporated herein and made a substantive part of this Agreement, the mutual covenants, promises and agreements of the parties hereto, each to the other, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto covenant, promise and agree as follows:

**1. Engagement.** The Company hereby engages the CONTRACTOR, and the CONTRACTOR hereby accepts engagement by the Company, as an independent contractor, to be engaged in the development of business for the Company arising from the sale and leasing of commercial properties. The CONTRACTOR does hereby represent and warrant, at all times during the term of this Agreement, that CONTRACTOR is and shall be licensed by the real estate regulatory authorities of the jurisdictions in which CONTRACTOR engages in business; that CONTRACTOR is, and will operate as, a licensed real estate agent; and that CONTRACTOR shall take all actions (except as otherwise provided for herein) necessary to maintain each such license in good standing and effect.

**2. Relationship.** CONTRACTOR shall perform services as a real estate sales and leasing agent, as provided in this Agreement, in a diligent and professional manner. In performing these services, the parties agree that CONTRACTOR shall act as an independent contractor and not as an employee, partner or legal representative of the Company. CONTRACTOR shall not perform any duties as an officer for the Company, and shall have no authority to bind the Company to any contracts or other obligations. All or substantially all of CONTRACTOR's remuneration shall be based upon commissions, to which CONTRACTOR is entitled under the terms of this Agreement or under applicable law, for completed sales, leasing or like transactions, and not upon hours worked on any other basis. CONTRACTOR shall not be treated as an employee for any federal or state income tax purposes, and the Company shall not withhold from CONTRACTOR's comrnlssions any amounts for income tax withholding, social security or other taxes on employee compensation; nor shall CONTRACTOR be considered an employee for purposes of fringe benefit programs which the Company may offer exclusively to its employees. CONTRACTOR agrees to be solely responsible for payment of all federal and state income taxes and all self-employment taxes on all commission income earned by CONTRACTOR.

The CONTRACTOR shall have exclusive control over the performance of CONTRACTOR's services hereunder and shall independently manage and control CONTRACTOR's business activities, subject only to the terms of this Agreement and the legal requirements for licensed real estate agents.

Nothing contained in this Agreement shall be deemed to prohibit or preclude CONTRACJOR's participation in or ownership of other businesses, ventures, enterprises, or other investments, but such activities shall only be permitted for CONTRACTOR to the extent that they do not materially and adversely inhibit CONTRACTOR's ability to perform CONTRACTOR's obligations and responsibilities hereunder, and that they do not constitute a conflict of interest. All such activities shall be disclosed to the Company.

**3. Term.** Subject to the provisions for termination of this Agreement as set forth in Section 11 hereof, the term of this Agreement shall begin on August 16, 2007, and shall extend until and through December 31, 2009, and the term hereof shall be renewed for successive one {1) year periods thereafter, unless either party gives the other written notice, at least thirty (30) days prior to the end of said term, or any renewal term, that the Agreement is to terminate at the expiration of such term.

**4. Compensation.** The Company shall compensate CONTRACTOR for CONTRACTOR's services, based upon the Company's commission schedules and policies published and in effect from time to time. Commissions are payable only after they have been received by the Company, and unless otherwise agreed, shall be paid to CONTRACTOR not later than Friday of the week following the week in which such commissions have been received by the Company. Any commission disputes or controversies between the CONTRACTOR and any other CONTRACTOR of the Company shall be referred to, and resolved by, the Company's Operations Committee pursuant to procedures it deems to be fair and appropriate. Its decision shall be final and binding upon the CONTRACTOR. Notwithstanding any commission policy to the contrary, any commissions which become payable to the CONTRACTOR after the termination of this Agreement shall be paid only at the minimum percentage "producer's share" then specified in said commission policy.

**5. loans.** Upon the request of CONTRACTOR, the Company may, in its sole and absolute discretion, make loans or guarantee bank loans to CONTRACTOR, in lieu of an advance against commissions. Any such loan shall be repayable upon receipt of commissions, the elapse of the term of such loan or the termination of this Agreement, whichever date is the earliest. As a condition of any such loan, CONTRACTOR agrees to execute a non-negotiable note to the Company or bank reflecting these terms, including an authorization to the Company to withhold the amount of any loan obligations from CONTRACTOR's commissions next payable.

**6. CONTRACTOR's Expenses.** CONTRACTOR hereby agrees:

(a) To pay for one-half of all fees, dues, tuition costs and other expenses necessary to maintain all of the professional real estate licenses CONTRACTOR is required to have by law, and one-half of the

12/2006, All Rights Reserved
:\Adm\CS\Forrns\lndependent Contractor Agreement - Blank

1

EXHIBIT A


Deft 02175

membership dues in any Company-sponsored professional or trade associations to which Contractor belongs.

(b) To furnish, operate and pay for CONTRACTOR's own automobile.

(c) To carry and pay for automobile public liability insurance with minimum limits sufficient to reasonably protect the CONTRACTOR and the Company from liability to third parties for personal injury and property damage, with the Company named as an additional insured (if possible) on all policies. If the CONTRACTOR, after reasonable efforts, is unable to have the Company named as an additional insured (or the equivalent) on the insurance policies without incurring an additional premium cost, the CONTRACTOR shall notify the Company and the Company shall have the option of paying such additional premium cost to obtain the coverage. The foregoing notification shall constitute full compliance with this Section 6(c) by the CONTRACTOR.

(d) To pay for all messenger, courier, photography, specialty advertising and other third party expenses CONTRACTOR incurs relating to the performance of CONTRACTOR's services under this Agreement.

(e) To pay the Company for any use by the CONTRACTOR of the Company's Resource Center and related facilities, in accordance with the schedule of charges for such use fixed by the Company from time to time.

(f) To allow the Company to deduct from any commissions payable to CONTRACTOR any charges or expenses of CONTRACTOR referred to in paragraphs (a) through (e) hereinabove, to the extent any of such charges or expenses are then due and have not been paid (or reimbursed to the Company) by CONTRACTOR.

(g) To pay for all communications or information processing equipment (including, without limitation, computer hardware and software, cellular telephones, pager, portable fax machines and like items) that the CONTRACTOR desires to have in connection with the performance of CONTRACTOR's services under this Agreement.

7. **Other Expenses.** The Company shall not be liable for any expenses incurred by CONTRACTOR without specific authority from the Company. Attorney's fees (including for the legal services of the Company's in-house counsel), court costs, title fees, referral fees and other expenses which must be paid out of commissions, or are incurred in the collection of commissions, shall be shared by the Company and the CONTRACTOR in the same proportion as the division of commissions. Suits for commissions shall be maintained or defended only in the name of the Company, and CONTRACTOR agrees to cooperate with the Company in maintaining or defending any such suits (including the expenses thereof), both during and after the term of this Agreement. In-house counsel's attorney fees shall only be charged in matters involving collection of commission revenue, and the portion of those fees charged to the CONTRACTOR shall not exceed the CONTRACTOR's share of the commission revenue sought to be collected.

8. **Medical, Health and Liability Insurance.**
(a) The Company shall provide to the CONTRACTOR the opportunity to participate in the Company's standard medical and health plan coverages, and shall pay the cost of the premiums for such coverages for CONTRACTOR (but not for CONTRACTOR's dependents, if any) in accordance with the Company's then-current policies applicable to other independent contractors with or employees of the Company. The Company shall not reduce medical and health plan coverage for any previously existing specific illness during the term of this Agreement.

(b) The Company shall further provide the CONTRACTOR with coverage under the Company's professional errors and omissions liability insurance policy. Upon request, CONTRACTOR shall be provided with a certificate or other evidence of the then-existing insurance. The Company's professional liability insurance coverage is presently in an annual aggregate not to exceed $2,000,000 with a $100,000 deductible amount. If this coverage is decreased, withdrawn, or modified so as to materially reduce CONTRACTOR's protection, the CONTRACTOR will be promptly notified of this in writing. In the event a professional liability claim is made based upon alleged acts or omissions of the CONTRACTOR and the Company is held liable for such claim or settles such claim, that portion of the defense costs or the settlement amount which are paid before the Company's professional liability insurance coverage becomes applicable to such claim will be shared on an equal "50/50" basis by the Company and the CONTRACTOR.

9. **Office Services.** The Company shall allow the CONTRACTOR to share the Company's office facilities, including receptionist and secretarial services, duplicating, telephone, faxing, and other customary office services and amenities, all at the expense of the Company (except as set forth in Section 6 (e) hereinabove).

10. **Listings and Confidential Information.** All listings and other real estate opportunities or matters as to which the CONTRACTOR performs any services hereunder are at all times the sole and exclusive property of the Company, and shall be treated as such by the CONTRACTOR. The CONTRACTOR shall treat all such listings, opportunities, matters and other information received from or through the Company as being confidential and proprietary to the Company, and the CONTRACTOR shall not reveal or disclose such information to any third parties without the express prior consent of the Company. The words "listings", "opportunities" and "matters" as used herein and in Section 11 hereinbelow, are not intended by the Company to in any way restrict or prevent CONTRACTOR from using, in any other present or future business position or relationship, CONTRACTOR's own business or personal contacts, general knowledge, expertise, rolodex files, information files or databases, or other non-proprietary items learned by, compiled by, or known to CONTRACTOR as a result of his working the real estate business. These Sections are applicable only to those listings, opportunities and matters which the Company is actively pursuing or engaged in at the time the termination of the independent contractor relationship occurs. Notwithstanding the foregoing, such rolodex files, information files, databases and other files compiled by the CONTRACTOR during the term of this Agreement shall at all times be and remain the exclusive property of the Company; the CONTRACTOR shall, however, have the right to make personal copies of all of same.

11. **Termination of Relationship.** This Agreement may be terminated as follows:

(a) Upon fifteen (15) days advance notice to the CONTRACTOR by the Company; however, notwithstanding such notice period, the Company, at its option, may require the CONTRACTOR to remove himself and his property from the Company's premises at any time prior to the expiration thereof;

(b) Upon fifteen (15) days advance notice to the Company by the CONTRACTOR; however, notwithstanding such notice period, the Company, at its option, may require the CONTRACTOR to remove himself and his property from the Company's premises at any time prior to the expiration thereof;

(c) Immediately, upon revocation or cancellation of the CONTRACTOR's right to be a licensed real estate agent in any jurisdiction;

(d) Immediately, upon the placing or imposing of any restriction or limitation by any governmental authority having jurisdiction over the Contractor, such that the CONTRACTOR can no longer lawfully engage in the professional services called for herein; or

(e) Immediately, upon notice by the Company if the CONTRACTOR has conducted business in an unprofessional, unethical, illegal or fraudulent manner; or if the CONTRACTOR's conduct has discredited the Company or has been detrimental to the reputation, character and standing of the Company; or if the CONTRACTOR is in breach or violation of any part of this Agreement, and CONTRACTOR fails to cure such breach or violation to the reasonable satisfaction of the Company within five (5) days after the CONTRACTOR receives written notice from the Company informing the CONTRACTOR of the existence of such breach or violation.

(f) At the expiration of the term (or any renewal term), by notice in accordance with Section 3 hereinabove.

After the termination of this Agreement, the CONTRACTOR shall not use or divulge, for CONTRACTOR's own advantage or for the advantage of any other person or entity, any proprietary knowledge or information learned by CONTRACTOR during the course of CONTRACTOR's relationship with the Company. Nor shall the CONTRACTOR continue to work on any then existing listings, opportunities or matters of the Company without specific express approval from the Company. Since it is generally in the best interests of both the Company and the CONTRAC..,OR to continue to have the CONTRACTOR involved in opportunities or matters on which the CONTRACTOR is actively performing services as a real estate agent at the time the termination of the independent contractor relationship occurs, the Company will make (and expects the CONTRACTOR to make) reasonable and good faith efforts to enter into a Termination Agreement (as referred to in Section 12 below) which fairly preserves and protects the rights of both the Company and the CONTRACTOR with regard to such opportunities and matters.

(g) At the written request of the CONTRACTOR made at or prior to the termination date, the Company will agree to limit the effect of the provision contained in the first sentence of the second paragraph of this Section 11 (f) to a sixty (60) day period following termination, and will agree to extend the fifteen (15) day period in Section 12(b) to ninety (90) days.

(h) The CONTRACTOR agrees, for the reasonable protection of the Company's business and relationships, that: (i) The CONTRACTOR will not terminate this Agreement together with, in concert with, or in conjunction or coordination with, any other employee or CONTRACTOR to the Company; (ii) for a period of six (6) months after the

DEFT 02176

termination of this Agreement for any reason, the CONTRACTOR will not become employed by, or affiliate as an agent or broker with, any other real estate brokerage firm which has hired or affiliated any other former agent/broker of the Company within a one (1) year period prior to the effective date of the termination of this Agreement; (iii) for a period of six (6) months after the termination of this Agreement for any reason, the CONTRACTOR will not directly, or indirectly through CONTRACfOR's then employer, licensor or third parties, either solicit for employment or affiliation, or employ or affiliate, any person who was an employee, agent or broker with the Company at any time within a one (1) year period prior to the effective date of the termination of this Agreement; and (iv) for a period of one (1) year after the termination of this Agreement for any reason, the CONTRACTOR will not, either directly or indirectly, solicit or accept any business from, or perform any real estate brokerage services for, any person or entity which was a client or customer of the Company within a one (1) year period prior to the effective date of the termination of this Agreement.

**12. Payments Upon Termination.** Upon the termination of this Agreement, all commissions of the CONTRACTOR which have then been earned (either by reason of a settled transaction or a contract or lease which is pending settlement) but not yet received by the Company shall thereafter be paid to CONTRACTOR, but only as, when and if received by the Company. After termination of this Agreement the CONTRAC,OR shall no longer be entitled to receive any other or further benefits herein set forth, except for payment of commissions either: (a) earned and received as of the termination date; or (b) arising out of a non-contingent fully-executed lease or a closed contract of sale procured by CONTRACTOR within a fifteen (15) day period following the termination date; or (c) arising out of any Termination Agreement entered into between the Company and the CONTRACTOR. Notwithstanding any commission policy to the contrary, any commissions which become payable to the CONTRACTOR after the termination of this Agreement shall be paid only at the minimum percentage "producer's share" then specified in said commission policy. Notwithstanding the foregoing terms and conditions, if the Company has provided a loan to the CONTRACTOR in accordance with Section 5 of this Agreement, or if the Company is owed reimbursement of expenses from CONTRACTOR, then the CONTRACTOR shall, upon termination, immediately pay to the Company any such amounts which the Company has not then recouped from the CONTRACTOR.

**13. Indemnification.**

(a) The Company shall indemnify, defend and hold harmless the CONTRACTOR from and against any and all claims, suits, judgments, or other liability or obligation where such liability or obligation arises out of the CONTRACTOR's rendering or failure to render real estate services authorized by and performed pursuant to this Agreement, provided, however, that the extent such indemnity and hold harmless shall not exceed the coverage provided by the Company's professional errors and omissions liability insurance policy and shall be subject to the retention and limits of liability set forth in the Declaration of said insurance policy.

(b) The CONTRACTOR shall indemnify, defend and hold harmless the Company from any and all expenses, costs, payments, taxes, interest, penalties which are attributable to or related to CONTRACTOR's commission income and which may be imposed on an "employer", as that term is defined in the Internal Revenue Code. It is the responsibility and obligation of the CONTRACTOR to pay all taxes, (including, but not limited to, all federal self-employment taxes) and interest and penalties thereon (if any), which may arise or become due at any time during the term of this Agreement by reason of the performance of the CONTRACTOR under this Agreement, and/or the payment of commissions to CONTRACTOR, whether the same be assessed against the Company or the CONTRACTOR.

The CONTRACTOR and the Company intend that this Agreement, including all of its terms and conditions, satisfy the standards of Section 3508 of the Internal Revenue Code and the common law. Once a year during the term of this Agreement the CONTRACTOR and the Company will review their status under this Agreement and take whatever actions may be necessary to continue to have this Agreement, including all of its terms and conditions, satisfy the standards of Section 3508.

**14. Entire Agreement.** This Agreement (together with any Addendum or Exhibits attached) contains the entire understanding between the parties hereto and supersedes all other oral and written agreements or understandings between them. No modification or addition hereto or waiver or cancellation of any provision shall be valid except by a writing signed by the party charged therewith. This Agreement, and the specific contents thereof, are recognized by the CONTRACTOR as being highly confidential and proprietary information of the Company, the dissemination of which to third parties could be extremely detrimental to the Company. Accordingly, CONTRACTOR shall not reveal, disclose or divulge this Agreement, or any of the contents thereof, to any other person or entity without the prior written consent of the Company (except where such disclosure is required by law). The foregoing sentence shall not apply to CONTRACTOR's spouse, or to financial advisors having a need to know such information. If CONTRACTOR fails to strictly comply with the foregoing: (a) the CONTRACTOR shall be deemed to have engaged in the type of conduct justifying immediate termination pursuant to Section 11 (e) of the Agreement; and (b) the CONTRACTOR shall be liable to the Company for any consequential damages or losses sustained by the Company as a result of CONTRACTOR's failure to comply.

The Company and the CONTRACTOR each recognize and acknowledge that violation of this Agreement by a party may result in harm or injury to the other party which is irreparable in nature and/or is not readily ascertainable in terms of monetary damages. Accordingly, it is agreed that the provisions hereof may be enforced by and pursuant to appropriate equitable remedies, including (without limitation) injunctive relief.

**15. Assignment.** This Agreement shall bind and inure to the benefit of the Company and its successors; this Agreement shall also bind and inure to the benefit of the CONTRACTOR, C0NTRACTOR's heirs, and personal and legal representatives. Neither this Agreement nor any part hereof shall be assigned or delegated by either party without the other party's express written consent.

**16. Notices.** All notices and communications hereunder shall be in writing and shall be deemed given by a party when personally delivered, or sent postage prepaid by first class mail, to the other party, using the respective addresses set forth on page 1 hereof. Either party hereto may change its address, by providing written notice thereof to the other party.

IN WITNESS WHEREOF, the parties hereto, intending to be thereby legally bound, have executed this Agreement as of the date first hereinabove set forth.

ATTEST:  COMPANY: TRANSWESTERN CAREY WINSTON, llC

£STERN

_____

By: _____
Thomas L Nordlinger, President

WITNESS: CONTRACTOR:

_____

Print Name: MARK J. GLAGOLA

*

Rev.12/2006, All Rights Reserved
Sdata:\Adm\CS\Forms\Jndependent Contractor Agreement - Blank

3

Deft 02177

### ADDENDUM TO INDEPENDENT CONTRACTOR AGREEMENT

This Addendum to the Independent Contractor Agreement dated effective August 16, 2007 (the "Agreement") between TRANSWESTERN CAREY WINSTON, LLC, d/b/a Transwestern (the "Company") and MARK J. GLAGOLA ("CONTRACTOR"), modifies and amends the aforesaid Agreement as follows:

1. Subject to the continued association of the CONTRACTOR with the Company, the Company agrees to provide CONTRACTOR with a monthly draw of $5,000.00 ("Non-Recoverable Draw") for the first 12 full months of the term of the Agreement (i.e., total Non-Recoverable Draw of $60,000). This Non-Recoverable Draw shall be paid to CONTRACTOR monthly in accordance with the Company's established schedule for draw payments. At the Company's sole option, the aforesaid Non-Recoverable Draw may continue for the 13th through 24th full months of the Tenn.

2. In the event that the Company does not elect to continue the CONTRACTOR's Non-Recoverable Draw for the 13th through 24th full months of the Term, as aforesaid, then subject to the continued association of the CONTRACTOR with the Company, the Company agrees to provide CONTRACTOR with a monthly draw of $5,000 during said period (Recoverable Draw"). Subject to Paragraph 3 below, such Recoverable Draw shall be fully recoverable by the Company from two-thirds (66.667%) of CONTRACTOR's share of commissions, as and when earned by the CONTRACTOR and received by the Company. The CONTRACTOR's obligation to repay to the Company the Recoverable Draw balance due at any time shall be a continuing personal, unconditional and irrevocable obligation, except as specifically otherwise provided in Paragraph 3 below; and promptly upon the Company's request, the CONTRACTOR shall execute the Company's approved form of a Promissory Note and a Collateral Assignment of Commissions to further evidence and secure CONTRACTOR's obligation to repay the Recoverable Draw.

3. Notwithstanding the foregoing, in the event that the CONTRACTOR remains associated with the Company at all times through August 31, 2009 (or if CONTRACTOR has been terminated by the Company on or prior to such date other than pursuant to Section 11(c), (d) or (e) of the Agreement), then the Company shall have no further rights to recover any then-outstanding balance of Recoverable Draw owed by CONTRACTOR hereunder.

4. For each of the first five (5) years of the Term of CONTRACTOR's association with the Company, the CONTRACTOR will be eligible to receive the following annual Incentive Awards:

    (i) $20,000, if for the prior one year of the Term CONTRACTOR has generated as procuring cause collected annual gross commissions in excess of $500,000; and

    (ii) An additional $20,000, if for the prior one year of the Term CONTRACTOR has generated as procuring cause collected annual gross commissions in excess of $600,000.

   For the purposes hereof, the term "gross commissions" means all collected revenues CONTRACTOR's performance of services for the Company (but excluding Consulting Commissions earned prior to October 16, 2007 and Referral Fees, both referred to hereinbelow), less any portions of such revenues paid or allocated to third parties or other Company licensees, and less any "deal-related" expenses customarily recovered off the top of commissions. For the purposes hereof, the "one year" period for calculation of Incentive Awards shall be September 1st through August 31st.

   Incentive Awards earned by CONTRACTOR will be payable within 30 days after the completion of each applicable one year period, and payment of any Incentive Award hereunder is strictly conditioned upon the CONTRACTOR remaining associated with the Company through the date on which such Incentive Award becomes payable hereunder.

5. CONTRACTOR's position shall be as a commercial real estate leasing agent for the Company, and he shall have the title of Senior Vice President and shall report to the

Deft 02178

Managing Senior Vice President in charge of the Company's Columbia, MD branch office.

6. CONTRACTOR shall be eligible to receive RefelTal Fees for originating property management business for the Company, with such Referral Fees to be in amounts and terms in accordance with the Company's policies regarding same.

7. It is acknowledged by the parties that the CONTRACTOR was working on the following leasing agency transactions prior to the Effective Date of the Agreement: (i) For American Realty Advisors (ARA) - Rock/Tenn or CSC; Czamowski; Kelly Press; and World Vision and (ii) For RREEF - Action Arena. If the CONTRACTOR's former employer Lincoln Property Company and either ARA or RREEF enter into a consulting agreement or similar arrangement wherein the CONTRACTOR is to provide services in his capacity with the Company to complete any of these transactions, and if the leases for any of these transactions are fully executed prior on or before October 16, 2007, then the CONTRACTOR shall be paid 90% of any consulting or other fees the Company receives from each such completed transaction, which shall be paid to the CONTRACTOR in lieu of the Company's standard Mid-Atlantic Region Commission Sharing Policy. In the event any of the listed transactions are completed by full lease execution after October 16, 2007, then any consulting or other fees the Company receives from such completed transactions shall be split with the Contractor in accordance with the Company's standard Mid-Atlantic Region Commission Sharing Policy.

8. During the first 60 full months of the Term of the Agreement, and subject to annual review at the Company's discretion, the Company shall provide the CONTRACTOR with $500.00 per month to defray miscellaneous business and client entertainment and promotional expenses, and up to $225.00 per month to reimburse actual cell phone expenses.

9. During the term of the Agreement, the Company shall provide to CONTRACTOR for his use a desktop computer with Microsoft Office Suites, CoStar and Aerial Express software.

10. As a specific inducement to the Company to enter into the Agreement with CONTRACTOR, the CONTRACTOR warrants and represents the following: (i) That he has not taken with him, and is not presently in possession of, any information which might constitute a trade secret of his former employer; (ii) That he will not disclose to the Company at anytime any information which might constitute a trade secret of his former employer; (iii) That he will honor all obligations which he has to his former employer; and (iv) That he has no agreements or covenants with, or obligations to, his former employer which would preclude his association with the Company or his performance of brokerage services on behalf of the Company.

Deft 02179

11. In Section 14 of the Agreement, the following will be added as a final sentence:

"Notwithstanding the preceding, CONTRACTOR shall have the right to disclose or divulge this Agreement, and the contents thereof: (a) to her attorney, accountants, financial planners and similar professionals; (b) to such others as may be necessary in any litigation concerning this Agreement; and (c) to any entities with whom CONTRACTOR may affiliate in the future for the limited purpose of assuring compliance with this Agreement."

Company: TRANSWESTERN REY WINSTON, L.L.C., d/b/a Transwes £ I\_\_\_\_---··.

By:_____, President

Contractor: _/s/ Mark J. Glagola_
MARK J. GLAGOLA

Deft 02180