**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **GERALD TRAINOR,** | * | |
| *Plaintiff/Cross-Plaintiff* | * | |
| v. | * | |
| **MARK GLAGOLA,** | * | |
| *Defendant* | * | Civil No. 1:23-cv-00881-JMC |
| **TRANSWESTERN CAREY WINSTON, LLC,** | * | |
| *Cross-Defendant* | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

| | |
|---|---|
| **MARK GLAGOLA,** | |
| *Counter-Plaintiff* | * |
| v. | * |
| **GERALD TRAINOR,** | * |
| *Counter-Defendant* | * |
| **TRANSWESTERN CAREY WINSTON, LLC,** | * |
| *Counter-Co-Defendant* | * |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*

| | |
|---|---|
| **TRANSWESTERN CAREY WINSTON, LLC,** | * |
| *Counter-Plaintiff/Cross-Plaintiff* | * |
| v. | * |
| **GERALD TRAINOR,** | * |
| *Cross-Defendant* | * |
| **MARK GLAGOLA,** | * |
| *Counter-Defendant* | * |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

<u>**MEMORANDUM OPINION AND ORDER**</u>

1

Presently pending before the Court is Defendant/Counter-Plaintiff Glagola's ("Glagola") Motion for Attorney Fees. (ECF No. 107, 115). The Court has considered Glagola's Motion, together with Counter-Codefendant Transwestern Carey Winston, LLC's ("TCW") opposition and Glagola's reply thereto. (ECF Nos. 122, 125). The Motion has been fully briefed, (ECF Nos. 107, 115, 122, 125), and no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). For the reasons set forth below, Glagola's Motion shall be GRANTED in part and DENIED in part.

## I.    BACKGROUND[1]

On March 31, 2023, Trainor filed the present lawsuit against Glagola and Transwestern Development Company, LLC ("TDC")[2] (ECF No. 1). Trainor's Complaint asserts claims for a declaratory judgment pursuant to 28 U.S.C. § 2201 (Count I) and Anticipatory Breach of Contract (Count II). (ECF No. 1 at 7-8).[3] The instant case is related to a prior case brought by Defendant against TDC in 2021[4] ("*Glagola v. TDC*") for the breach of a May 29, 2019 agreement (the "Glagola/TDC Agreement") in which TDC agreed to pay Glagola 5% of the "incentive fee" earned in connection with the Penn Commerce project and 2% of its incentive fee for the Condor Project. *Id.* at 5-6. The TDC companies refused to honor the Glagola/TDC Agreement because, according to them, Glagola terminated his independent contractor relationship with TCW. Subsequently, Glagola filed suit against TDC ("*Glagola v. TDC*"). *See Glagola v. Transwestern Development Company, LLC, et al.,* 2022 WL 2916169, at *3. This Court granted Summary Judgment in favor of Glagola, which TDC appealed. *See Glagola v. Transwestern Dev. Co.*, No. 22-1890, 2023 WL

---

[1] The background that follows has been streamlined to incorporate the facts which are most relevant to the instant motion for attorney fees.

[2] TDC was later dismissed as a party, and Defendant joined Transwestern Carey Winston, LLC ("TCW"). (ECF Nos. 77, 4).

[3] When the Court cites to a specific page number or range of page numbers, the Court is referring to the page numbers provided in the electronic filing stamps located at the top of every electronically filed document.

[4] *Glagola v. Transwestern Development Company, LLC*, et al., 1:21-cv-01230-JMC, 2022 WL 2916169 (D. Md. July 26, 2022).

4759125 (4th Cir. July 26, 2023).

While the Fourth Circuit's affirmation of this Court's Order Granting Glagola Summary Judgment was pending, Trainor brought the above-captioned case, seeking a portion of the monies to be paid to Glagola by TDC based on a Split Agreement between Trainor and Glagola.  (ECF No. 1).  Under the Split Agreement in the present case, Trainor and Glagola

> agreed to split all compensation, commission, and remuneration for projects, relationships, and developments that they facilitated or otherwise brokered (whether together or through their individual efforts) as follows: 62.5% to Trainor and 37.5% to Glagola for all deals or other projects closed in 2018, and 60% to Trainor and 40% to Glagola for all deals or other projects closed in 2019.

*Id.* at 9.

On April 27, 2023, Glagola filed a counterclaim against Trainor and TCW, which sought a declaratory judgment that his and Trainor's Split Agreement did not apply to the Glagola/TDC agreement.  (ECF No. 4).  Glagola additionally sought a declaration that he had not violated his March 1, 2019 Qualified Real Estate Agent Agreement (the "QREA") independent contractor agreement with TCW by entering into the Glagola/TDC Agreement or by receiving payment from TDC.  *See id.*  On September 11, 2023, TCW filed a counterclaim against Glagola and a cross-claim against Trainor, asserting claims for declaratory judgment against Glagola and Trainor. In pertinent part, the TCW counterclaim involved a breach of contract claim against Glagola, claiming that he breached the QREA with TCW.  The QREA with TCW provides in relevant part that:

> In the event any legal proceeding is initiated by any party against any other party to enforce, interpret or otherwise obtain relief in connection with this Agreement (the "Proceeding" ), the judge or tribunal in such Proceeding shall, upon request, declare a "Prevailing Party" in the Proceeding, and the Prevailing Party shall be entitled to recover from the other party all reasonable costs and expenses, including actual attorneys' fees and experts' fees, relating to or arising out of such Proceeding.

Joint Tr. Ex. 40 at § 33.

A two-day trial occurred before this Court on September 29 and 30, 2025. (ECF Nos. 90, 91). The Court issued a Memorandum Opinion and Order of Judgment in favor of Glagola on November 25, 2025 as to both Glagola's Split Agreement with Trainor, and his QREA with TCW.[5] (ECF No. 105).

## II.    DISCUSSION

The central dispute before the Court is whether the QREA entitles Glagola to a total Fee and Expenses award in the amount of $188,180.00[6] from TCW in connection with the above-captioned litigation, as TCW was not a party to the Split Agreement between Trainor and Glagola yet that Split Agreement was central to the dispute. TCW argues that a fee award in the amount of $188,180.00 is unreasonable because "many or most of the fees were incurred in connection with his claims and defenses involving Trainor" and not TCW. (ECF No. 122 at 11). The asserted right to fees arises from the QREA to which Glagola and TCW are obligated. Section 33 of the QREA provides as follows:

> In the event any legal proceeding is initiated **by any party against any other party** to enforce, **interpret or otherwise obtain relief in connection with this Agreement** (the "Proceeding"), the judge or tribunal in such Proceeding shall, upon request, **declare a "Prevailing Party" in the Proceeding**, and the Prevailing Party shall be entitled to recover from the other party all reasonable costs and expenses, including actual attorneys' fees and experts' fees, **relating to or arising out of such Proceeding**.

Joint Tr. Ex. 40 at § 33 (emphasis added). As an initial matter, TCW makes several concessions: (1) Glagola is a Prevailing Party; (2) the litigation between Glagola and TCW is a Proceeding; and

---

[5] Trainor filed a motion to alter/amend the judgment, which the Court denied on February 20, 2026. (ECF Nos. 110, 117, 123, 124). Thereafter, Trainor filed a Notice of Appeal, which is presently pending. (ECF Nos. 126, 127, 128).
[6] Glagola's itemized billing entry sheets demonstrate the fee breakdown by litigation phase and task performed. *See* (ECF No. 115-4). Glagola incurred a total fee rate of $175,855.00, which his counsel voluntarily reduced to $162,547.50. *Id.* at 1. As such, the instant motion requests a fee award in the amount counsel charged Mr. Glagola, which is $162,547.50. *See id.* In his Reply brief, Glagola included a supplement to his Motion based on Trainor's Motion to Alter/Amend and other fees incurred during the time he spent through the time of filing his Reply. (ECF No. 125). Thus, the total fee request is $188,180.00, and all references, even those from TCW's Opposition will contemplate the total amount of $188,180.00.

(3) Glagola is entitled to recover an award of reasonable costs and expenses, including attorney's fees. (ECF No. 122 at 8). The Court accepts these concessions. TCW primarily disputes whether (1) the claims concerning the Split Agreement fall within the scope of the QREA and (2) the Court should award Glagola substantially all fees when a significant portion of the litigation exclusively considered the Split Agreement to which TCW was not a party. (ECF Nos. 115 at 11, 122 at 7-8).

**A.     The Plain Language of the QREA Does Not Support a Fee Award for Claims Initiated by Trainor Against Glagola in Connection to the Split Agreement.**

As an initial matter, the parties dispute the scope of rights under the QREA. Glagola posits that the QREA entitles him to all fees arising out of the litigation based on the "relating to or arising out of [the] Proceeding" language. (ECF No. 115 at 10). Relying on the language that defines a Proceeding as "any legal proceeding initiated by any party against any other party to enforce, interpret or otherwise obtain relief in connection with this Agreement," TCW argues that the QREA was not intended to apply to claims unrelated to it, even if litigated in the same case. (ECF No. 122 at 8). Thus, TCW concedes that the claims between Glagola and TCW with respect to the rights under the QREA are a Proceeding and urges the Court to reject an expansive interpretation of the language that would also include the claims between Glagola and Trainor as a "Proceeding" under the QREA. *See id.*

Maryland interprets fee-shifting provisions of contract under the objective theory of contract interpretation. *Plank v. Cherneski,* 469 Md. 548, 617, 231 A.3d 436 (2020) (recognizing that courts should "look to the entire language of the agreement, not merely a portion thereof" and "consider the language of the contract in its 'customary, ordinary, and accepted meaning'"). Here, the Court agrees with TCW's interpretation of the QREA. The plain language makes clear that in order to be recoverable, fees must relate to or arise from a Proceeding, which is defined as "any legal proceeding is initiated by any party against any other party to enforce, interpret or otherwise

5

obtain relief in connection with this Agreement."  In this instance, the legal proceeding "against any party to enforce interpret or otherwise obtain relief" and "in connection with" the QREA was initiated by Glagola against TCW in Glagola's counterclaim.  (ECF No. 4).  In the Court's view, any additional fees "arising out of or related to" that Proceeding would include expenses incurred for TCW's counter-claim against Glagola; however, the claims brought by Trainor against Glagola concerning the Split Agreement to which TCW was not a party would not be properly defined as part of the "Proceeding" under the QREA.  Therefore, the Court finds as an initial matter that the proper scope of fees under the QREA include those expenses incurred by Glagola in connection to the litigation concerning the QREA and not the Split Agreement.  *Plank*, 469 Md. at 617.

> **B.     The Maryland Rules of Professional Conduct Entitle Glagola to a Substantial Portion of the Fees He Requests**

Once the Court declares a "Prevailing Party" (here, Glagola), that party is entitled to recover reasonable costs and expenses.  (ECF Nos. 115 at 10, 122 at 8). "Contract provisions providing for awards of attorney's fees to the prevailing party in litigation under the contract generally are valid and enforceable in Maryland." *Myers v. Kayhoe*, 391 Md. 188, 208, 892 A.2d 520 (2006) (citing *Atlantic v. Ulico*, 380 Md. 285, 316, 844 A.2d 460 (2004)).  However, "[e]ven in the absence of a contract term limiting recovery to reasonable fees, trial courts are required to read such a term into the contract and examine the prevailing party's fee request for reasonableness." *Id.*  For example, "Maryland law limits the amount of contractual attorneys['] fees to actual fees incurred, regardless of whether the contract provides for a greater amount." *SunTrust Bank v. Goldman*, 201 Md.App. 390, 398, 29 A.3d 724 (Md. Ct. Spec. App. 2011). Therefore, the "party requesting fees has the burden of providing the court with the necessary information to determine the reasonableness of its request." *Myers*, 391 Md. at 208.  "The trial court's determination of the reasonableness of attorney's fees is a factual determination within the

sound discretion of the court, and will not be overturned unless clearly erroneous." *Id.* (concluding

a trial court erred by refusing to award fees altogether).

In contractual fee-shifting cases for contracts governed by Maryland law, the Appellate

Court of Maryland has rejected the lodestar approach this Court typically employs in statutory fee-

shifting cases in favor of an approach based on Maryland Attorneys' Rule of Professional Conduct

(the "MRPC") 1.5. *See Ochse v. Henry*, 216 Md.App. 439, 456-57, 88 A.3d 773 (Md. Ct. Spec.

App. 2014); Md. Rule 19-301.5. "In order to apply Rule 1.5 to a fee award, a court does not need

to evaluate each factor separately, and it need not necessarily hold an evidentiary hearing to

determine an appropriate award." *SunTrust Bank v. Goldman*, 201 Md.App. 390, 402, 29 A.3d

724 (2011). According to Rule 1.5, those factors are:

> (1) the time and labor required, the novelty and difficulty of the questions involved,
> and the skill requisite to perform the legal service properly;
> (2) the likelihood, if apparent to the client, that the acceptance of the particular
> employment will preclude other employment of the attorney;
> (3) the fee customarily charged in the locality for similar legal services;
> (4) the amount involved and the results obtained;
> (5) the time limitations imposed by the client or by the circumstances;
> (6) the nature and length of the professional relationship with the client;
> (7) the experience, reputation, and ability of the attorney or attorneys performing
> the services; and
> (8) whether the fee is fixed or contingent.

Maryland courts "'may consider, in [their] discretion, any other factor reasonably related

to a fair award of attorneys' fees,' and 'should consider the amount of the fee award in relation to

the principal amount in litigation.'" *Ochse*, 216 Md.App. at 456-57 (quoting *Congressional Hotel

Corp. v. Mervis Diamond Corp.*, 200 Md.App. 489, 500, 28 A.3d 75 (2011) (emphasis omitted)).

Although the factors under the lodestar and Rule 1.5 approach are similar, the "underlying policy

differences are clear." *Id.* at 457-58. In *Congressional Hotel*, the then Maryland Court of Special

Appeals recognized,

> A contractual fee-shifting provision is designed by the parties, not by the legislature. Such a provision is simply an agreement between private parties to pay the attorneys' fees and costs reasonably incurred in the course of litigation. Thus, it usually serves no larger public purpose than the interests of the parties. And, therefore, while an award of attorneys' fees and costs in a contractual fee-shifting case "may approach or even exceed the amount at issue," the "relative size of the award" takes on added significance in such a case because the contractual provision lacks the "public policy underpinnings" of a statutory fee-shifting provision.

*Congressional Hotel Corp.*, 200 Md.App. at 505.  Accordingly, the Court's "duty in fashioning an award pursuant to a contract is to determine the reasonableness of a party's request." *Osche*, 216 Md.App. at 458.

Here, Glagola seeks to recover fees generated by four Council Baradel attorneys and one paralegal.  According to the declarations of Mr. Meneely and Mr. Kagan (ECF Nos. 115-5; 115-6), the standard Council Baradel rates are as follows: $300-$450 for partners; $200-$300 for associates; and $150-$200 for paralegals.  (ECF Nos. 115-5; 115-6).  TCW does not dispute that the hourly rates applied were reasonable.  (ECF No. 122 at 13).  There is no doubt that the case involved complex legal issues and that Council Baradel offered experience, reputation, and positive results for their client.  Moreover, it is well taken that "Mr. Glagola's fees…constitute[] less than 11% of the total amounts sought by Mr. Trainor and [TCW]".  (ECF No. 115-6 at 5).

TCW does dispute certain "editorial comments made by Glagola" in his motion.  (ECF No. 122 at 13).  For example, Glagola posits,

> Despite clearly being notified of Mr. Glagola's agreement with the TDC Companies to participate in the promotes for Penn Commerce and Condor, and the agreement being approved by someone with decision-making authority, TCW—an entity owned and controlled by the same people who own the TDC Companies— conveniently changed its position in this litigation and refused to acknowledge Mr. Glagola's entitlement to that money.

(ECF No. 115 at 21). Some dispute also arises in the briefing about whether TCW "joined forces" with Trainor and improperly increased the costs of litigation by withholding discovery and by changing its position in this litigation after it was joined.  (ECF Nos. 115, 122).  TCW disputes

any such conduct.  Based on the record before it, the Court trusts that the parties complied with their ethical obligations during discovery and asserted non-frivolous positions in the case.  The Court therefore declines to find that litigation costs were improperly increased.  Moreover, for the reasons set forth more particularly below, and in consideration of the express language of the QREA, the Court concludes that some of the hours claimed should be reduced.

        *i.*        <u>*The Court Declines to Apply the Common Core of Facts Doctrine*</u>

As an initial matter under this prong, Glagola argues that application of the common core of facts doctrine supports a broader award of fees.  (ECF No. 115 at 10-11).  TCW urges the Court to decline to extend the common core of facts doctrine.  (ECF No. 122 at 9).  The "common core of facts" doctrine "exists as a bridge that allows a court to award a fully compensatory fee where an attorney may not have prevailed on each and every claim or defense but still has achieved excellent results." *Osche*, 216 Md.App. at 459; *Friolo v. Frankel*, 373 Md. 501, 522-25, 819 A.2d 354 (2003). Thus, the common core of facts doctrine "solves the problem of courts not being able to compensate attorneys for fees that cannot easily be allocated between fee-shifting claims and factually or legally related non-fee-shifting claims." *Osche*, 216 Md.App. at 459.  "In those situations, counsel's time will usually be devoted to the overall litigation, making it difficult to divide the hours expended on a claim-by-claim basis. In such a case, all claims should be regarded as related." *Imgarten v. Bellboy Corp.*, 383 F.Supp.2d 825, 839 (D. Md. 2005) (citing *Hensley v. Eckerhart*, 461 U.S. 424 (1983)). Much like other portions of a fee analysis, the Court has discretion to require a proportionate award, and the doctrine is "merely one part of one factor a court should consider" when determining the reasonableness of a fee award. *Osche*, 216 Md.App. at 460. As such, "trial courts…are not necessarily required" to apply the common core of facts doctrine. *Id.* at 467. (applying a proportionate award rather than the common core of facts

9

doctrine).

In *Osche*, the court engaged in a comprehensive review of the evolution of the common core of facts doctrine in Maryland fee cases. *See id.* Where the *Osche* court recognized that "[c]ertain circumstances could make another method more reasonable, but [that decision falls within] discretion of the trial court," it affirmed the trial court's order fashioning a proportionate award. *Id.* at 468. In *Diamond Point Plaza v. Wells Fargo Bank*, the court considered two contractual fee-shifting provisions under a mortgage agreement and a lease agreement. *Diamond Point Plaza Ltd. P'ship v. Wells Fargo Bank, N.A.*, 400 Md. 718, 728, 929 A.2d 932 (2007). The court clarified that where allocating fees and expenses to appropriate claims is practicable, attorneys should do so; at the same time, when it is not "[i]t is not reasonable to expect the lawyer to have in tow an industrial engineer with a stop watch to measure how much time was devoted to one claim or another." *Id.* at 761. As such, the court reversed a trial court's decision to deny outright a claimant's attorney fee petition for failure to itemize each instance of time spent on the litigation in his legal bill. *Id.* at 760. In *Weichert Co. of Maryland v. Faust*, the court considered a fee-shifting provision within a non-solicitation clause in an employment contract. *Weichert Co. of Md. v. Faust,* 191 Md.App. 1, 989 A.2d 1227 (2010), *aff'd on other grounds by* 419 Md. 306, 19 A.3d 393 (2011). The trial court applied the common core of facts doctrine, which the plaintiff argued on appeal was an abuse of discretion. The appellate court found no abuse of discretion in awarding the defendant fees incurred on claims other than her defense of the breach of contract claim, which was the only claim that related to the fee-shifting provision. *Id.* at 17-18. The court reasoned, "all of [the plaintiff's] claims alleged that [the defendant] had solicited [the plaintiff's] employees to defect. Thus, disproving that fact was a necessary defense to each claim, and it formed the common factual core of the court's fee award." *Id.* at 20.

10

Against that backdrop, the Cout is satisfied that the claims here, which involved two different contracts to which different parties were obligated, do not warrant the application of the common core of facts doctrine. From the outset of this litigation, the central dispute involved a question about the distribution of monies owed under the Split Agreement between Glagola and Trainor. (ECF No. 1).  Only after Glagola filed his answer did an additional question arise about the rights under the QREA. [7]  (ECF No. 4).  Even still, the Court considered that "the question presented is whether, pursuant to [the QREA and Split Agreement], Defendant must share with Mr. Trainor and/or TCW the money he ultimately collected from third party [TDC] as a result of this Court's decision in his favor in [*Glagola v. TDC*].  In the Court's view, the claims between Glagola and TCW could have proceeded in litigation entirely independent from Trainor.[8] Moreover, Trainor's claims against Glagola could well have survived without TCW's presence as a party in the litigation. The Court agrees that some facts concerning the Penn Central/Condor deals were relevant to Trainor's case, and to that extent, Glagola's position is understood.

Nevertheless, for the majority of the effort involved in resolving the dispute between Trainor and Glagola, TCW was a background actor, and Mr. Trainor was, in turn, a background actor with respect to the claims between TCW and Glagola.  (ECF No. 105) ("The current

---

[7] The Court finds pertinent its previous note that the parties' references to TCW as a third-party defendant is "somewhat confusing from a joinder standpoint," since Glagola added TCW as a defendant to his counterclaim against Trainor under Rule 13 of the Federal Rules of Civil Procedure rather than Rule 14, "which is limited to derivative claims."  (ECF No. 105 at 2 n.1); see also (ECF No. 4).  As such, the Court clarified that TCW's precise role in the litigation is more accurately stated as a counter-codefendant than a third-party defendant. To that extent, the Court observes that the parties' contemplation of TCW's very presence in this Proceeding has involved some confusion, perhaps partially due to the uncommon scenario presented by the litigation at hand.

[8] Glagola argues that because TCW and Trainor asserted a joint defense privilege during discovery that they admitted an "alignment of interests in the case." (ECF No. 115 at 26).  TCW posits that such an inference "is an enormous leap by Glagola." (ECF No. 122 at 20). The Court agrees and therefore declines to find any admission of identical interests based on discovery documents the Court is unable to review.  Similarly, the Court finds persuasive TCW's argument that "the Court, in determining a fair award of attorneys' fees, must consider that this case was brought by Trainor to assert that he was entitled to a portion of the payment made in the TDC Litigation pursuant to the terms of his Split Agreement with Glagola. The vast majority of the fees incurred by Glagola in this case would have been incurred even if TCW never asserted a claim against Glagola." (ECF No. 122 at 20).

litigation…concerns whether Defendant's participation in the Penn Commerce and Condor promotes comes within Defendant's QREA Agreement with TCW and/or his May 14, 2018 Split Agreement with Plaintiff such that Defendant is obligated to share that money with TCW and/or Trainor, in whole or in part."). As such, some of Glagola's fees would have been incurred regardless of the claims Glagola brought against TCW.

In support of this notion, TCW emphasizes that this case "does not merely involve different claims, but different litigants with unrelated claims involving separate contracts." (ECF No. 122 at 18). As TCW states,

> the claims and defenses asserted by Glagola and Trainor were substantially unrelated to the claims and defenses asserted by Glagola and TCW. The Trainor-Glagola claims and defenses involve the history of the relationship between Trainor and Glagola; the history of their Split Agreement and predecessor agreements; the course of dealings between the Glagola and Trainor, including other projects they worked on together that either were or were not subject to their Split Agreement; their communications regarding the projects at issue in the TDC Litigation; the termination of their relationship; and arguments regarding whether and when the Split Agreement had expired at the time the payment arising out of the TDC Litigation had been made. These issues are unrelated to any of the claims and defenses between TCW and Glagola.

*Id.* The Court agrees. Glagola initiated the Proceeding against TCW in connection with the QREA as part of its counterclaim against Trainor, who did not initiate the any claim against TCW or in connection to the QREA. *Compare* (ECF Nos. 1, 4). While the QREA provision is ultimately at issue now, it is not because Trainor attempted to exercise rights to it; he not a party to it. Here, given the unique nature of the relationship between Glagola, TCW, and Trainor; how TCW came to be involved in the litigation in the first place; and the separable nature of the two different contracts involved, the Court finds it most appropriate to reduce some of the hours spent on work that did not involve TCW and necessarily fall outside the scope of the QREA. Ultimately, it is the Court's view that the circumstances here present the kind of scenario for which *Osche* leaves an open door. *Osche*, 216 Md.App. at 468.

12

ii.    *Glagola's Hours Shall be Reduced for Work Expended Exclusively on Claims that fall Outside the Scope of the QREA*

Therefore, the Court finds it appropriate to award Glagola the majority of the fees he requests, with some reductions for work performed that would clearly fall outside the purview of the QREA and consistent with the reasoning above. The Court notes that contrary to Glagola's contention that TCW's decision not to point to specific entries which should be excluded, TCW pointed to several categories of work that should be excluded, like the Trainor motions to amend the Complaint, the summary judgment motions which did not involve TCW, etc. (ECF No. 122 at 14-16).  Moreover, the Court observes that many of the time entries provided on ECF Nos. 115-4 and 125-1 are exceedingly vague.  For example, many motions entries are "work on reply" or "work on opposition and cross motion."  Similarly, certain entries refer to the "Transwestern" litigation, which could refer to TDC or TCW.  While not all entries are this vague, a significant portion are.  Thus, contrary to Glagola's urging, the Court will not construe TCW's failure to request the reduction of entries of that nature as a concession that all legal and factual issues are intertwined.  The Court is satisfied that TCW adequately articulated its specific concerns.

Accordingly, the Court shall reduce the following hours from Glagola's total request for $188,180.00:

| Work Performed | Hours Claimed | Hours Excluded | Rate Claimed | Rate Excluded |
|---|---|---|---|---|
| Case Development | 12.8 | 3.8[9] | $4,720.00 | $1,295.00 |
| Trainor Written Discovery (ECF No. 115-4 at 3) | 1.5 | 1.5 | $600.00 | $600.00 |
| Trainor Deposition (ECF No. 115-4 at 4) | 3.5 | 3.5 | $1,400.00 | $1,400.00 |
| Summary Judgment | 107.8 | 71.8[10] | $42,820.00 | $28,457.00 |

---

[9] The Court has reduced a total of 3.8 hours for work on case development before TCW was in the case. The hours represent the first four entries on ECF No. 115-4 at 2, and the corresponding value was $1,295.00.  As such, that value will be excluded.

[10] The Court agrees with TCW's position that much of the time spent on summary judgment would fall outside the

| | | | | |
|---|---|---|---|---|
| Motions (ECF No. 115-4 at 1) | | | | |
| Trainor 1st Motion to Amend (ECF No. 115-4 at 1) | 5.6 | 5.6 | $2,240.00 | $2,240.00 |
| Trainor 2nd Motion to Amend (ECF No. 115-4 at 1) | 9.3 | 9.3 | $1,870.00 | $1,870.00 |
| Trainor Motion to Alter or Amend | 12.7 | 12.7 | $5,397.50 | $5,397.50 |
| Trainor Motion to Alter or Amend[11] (ECF Nos. 125-1 at 1) | 34.9 | 34.9 | $13,371.25 | $13,371.25 |
| | | | Total Excluded | $54,630.75 |
| | | | **Total Recoverable** | **$133,549.25** |

## III.    CONCLUSION

For the foregoing reasons, Glagola's Motion for Attorney Fees (ECF No. 107, 115) is GRANTED IN PART and DENIED IN PART such that Glagola is entitled to an award of reasonable fees in the amount of $133,549.25.


Date: March 27, 2026                                             /s/
                                                                          J. Mark Coulson
                                                                          United States Magistrate Judge


---

scope of the QREA.  However, Glagola's billing summary did not clarify which time was allocated to each motion. While it would be entirely possible to do so, the billing summary does not make such a specification.  Thus, the Court is unable to apply the same approach to the proper reduction as it did with the Pleadings. As such, the Court divided the total number of hours 107.8 by 3 (assuming equal time spent on each summary judgment, that TCW represents one third of the total opposing parties for Glagola, and that Glagola can recover for his own summary judgment motion) to reach a rounded result of 36.00 hours spent on TCW's summary judgment motions. As such, the Court reduced the hours worked from 107.8 by 71.8 hours to represent a total of 36 hours spent on the TCW summary judgment. Applying the same reasoning, the Court divided the total value of $42,820.00 by 3 to reach a rounded result of $14,273.00 expended on those motions.  As such, the Court has excluded $28,457.00 from the fee request.

[11] Based on the Court's review of the billing summary, the Supplemental fees added a total of $25,632.50 (comprised of $13,547.25 of work expended on the Trainor Motion to Alter or Amend with $12,261.25 of work expended on the Fee Petition preparation) to the original fee request, which was $162,547.50.  Therefore, the Court understands that the fees claimed in the initial petition for the Trainor Motion to Alter/Amend were not represented in the Supplement. Accordingly, both are recognized in the JMC's breakdown of reduced fees.